### UNITED STATES v. CARLIN et al.

(District Court, E. D. Pennsylvania. December, 1917.)

#### No. 183.

CONSPIRACY 33—CONSPIRACY TO DEFRAUD UNITED STATES.

Where a timekeeper and a laborer at the ship building plant at Hog Island conspired together to cause to be issued to the laborer fraudulent time checks, which he was to cash, the two are guilty of conspiracy to defraud the United States, within Criminal Code, § 37 (Comp. St. § 10201); the United States Shipping Board Emergency Fleet Corporation, organized by the Shipping Board created by Shipping Act Sept. 7, 1916, having contracted, as authorized by executive order under the emergency shipping fund provision of Urgent Deficiencies Appropriation Act June 15, 1917, for the doing of the work on a cost plus basis, the funds expended were those of the United States, and the effect of the conspiracy would be to deplete them.

At Law. James J. Carlin and Harry Butler were convicted, under Criminal Code, § 37, of conspiring to defraud the United States. On motion for new trial. Motion overruled.

Francis Fisher Kane, U. S. Atty., and Robert J. Sterrett, Asst. U. S. Atty., both of Philadelphia, Pa., for the United States.

Henry M. Stevenson and John R. McLean, Jr., both of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. The defendants were indicted and convicted upon a charge of conspiring to defraud the United States under the following circumstances:

Harry Butler was employed as a timekeeper at the ship building plant at Hog Island, and James J. Carlin as a laborer. The government offered evidence to show that the defendants conspired together to cause to be issued to Carlin fictitious and fraudulent time checks and discharge slips under the name of J. Garlan; that Carlin should present the time checks and discharge slips to the paymaster and receive the amount of wages purporting to be due.

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There was evidence that entries were made by Butler on time sheets showing wages due in the name of J. Garlan, that a time check was issued in the name of J. Garlan, and that Carlin presented himself at the paymaster's office in an attempt to collect the wages purporting to be due J. Garlan. The motion for new trial raises a jurisdictional question, viz. whether the evidence showed a fraud upon the United States.

The government offered documentary evidence and relied upon statutes of the United States to show that the funds out of which the wages were paid were the funds of the United States, and that the effect of the payment to Carlin was to fraudulently diminish those funds. The work was being conducted at Hog Island in the building of a shipyard and the construction of vessels under the following circumstances, so far as they have to do with the question raised in this case:

. By the terms of the Shipping Act approved September 7, 1916 (39 Stat. 729, c. 451, § 3 [Comp. St. § 8146b]), the United States Shipping Board was created, to be composed of five commissioners to be appointed by the President. Under section 5 (section 8146c) the board, with the approval of the President, is authorized to have constructed and equipped vessels suitable for use as naval auxiliaries or army transports, or for other naval or military purposes. Under section 11 (section 8146f), the board is authorized to form under the laws of the District of Columbia a corporation for the construction of merchant vessels in the commerce of the United States, and on behalf of the United States, to subscribe to, purchase, and vote not less than a majority of the capital stock of such corporation.

In accordance with the provisions of this section, the United States Shipping Board Emergency Fleet Corporation, capitalized at $50,000,000, was incorporated under the laws of the District of Columbia on April 17, 1917. Under section 1 (a) of the emergency shipping fund provision of the Urgent Deficiencies Appropriation Act approved June 15, 1917, c. 29, 40 Stat. 182, the President is authorized and empowered to place an order with any person for such ships or material as the necessities of the government, to be determined by the President, may require during the period of the war. Under section 4 of the emergency shipping fund provision, the President may exercise the power and authority so vested in him, and expend the sum appropriated through such agency or agencies as he may determine from time to time. Section 12 provides that the cost of construction of ships authorized shall not exceed the sum of $500,000,000, the expenditure of which is authorized, and the sum of $250,000,000 is appropriated for that purpose.

By an executive order of July 11, 1917, the President, under the authority contained in section 4 of the emergency shipping fund provisions above referred to directed that the United States Shipping Board Emergency Fleet Corporation should have and exercise all power and authority vested in him in the "emergency shipping fund" section, in so far as applicable to and in furtherance of the construction of vessels, or of contracts for the construction of such vessels, and in furtherance of the production, purchase, and requisitioning of materials

for ship construction. It appears, therefore, that the Shipping Board is constituted by law an agency of the United States for the purposes of the construction of vessels and of entering into contracts for vessels; that under authority of law it caused the incorporation of the United States Shipping Board Emergency Fleet Corporation to carry out the purposes of the act; and that the President, under authority of law, conferred upon the latter corporation the power and authority conferred upon him of entering into contracts for the construction of vessels and expenditure of the necessary funds authorized and appropriated under the emergency shipping fund provision of the Appropriation Act of June 15, 1917.

A contract of agency was thereupon entered into between the American International Corporation, as "agent," and the United States Shipping Board Emergency Fleet Corporation as "owner," representing the United States of America. Under this contract the agent was employed to construct a shipyard at Hog Island, to organize a force of workmen, superintendents, and the administration necessary to carry out to completion the building of vessels, and to proceed with the construction of cargo vessels for the owner. All contracts and orders placed by the agent are to be in the name of the owner, by the agent; the title to vessels either completed or under construction, after inspection and approval by the owner, is to be in the United States. The total actual cost of the construction of the plant and vessels is to be paid by the owner to the agent out of funds deposited by the owner in advance to the credit of the agent as trustee for the purposes of the contract in such sums as may be necessary to finance the work in general, and to provide for payments for wages and salaries of persons employed upon the work at the shipyard.

The contract provides that the compensation of the agent shall be in the form of a fee based upon the contract actual cost and holds the agent accountable to the owner for all funds deposited for payment of the actual cost of materials and labor for the work. Included in the contract actual cost to be paid out of said funds is the cost of direct labor employed in the execution of the work and the overhead expenses, including indirect labor and general and administrative expenses.

Prior to the date of the offense set out in the indictment, the American International Corporation, with the consent of the United States Shipping Board Emergency Fleet Corporation, entered into a contract with the American International Shipbuilding Corporation, as its agent, to carry out the contract above referred to, and at that time the work was being carried on by the latter corporation.

Under the terms of the contracts above referred to, the United States Shipping Board Emergency Fleet Corporation, being the agency designated by the President for carrying out the powers conferred upon him in the construction of ships and representing the United States, employed as its agent the American International Corporation and the latter corporation, with the consent of the United States Shipping Board Emergency Fleet Corporation, employed as its agent the American International Shipbuilding Corporation to carry out the construction contract.

The funds deposited by the United States Shipping Board Emergency Fleet Corporation under the construction contract for the payment, inter alia, of workmen's wages, were the funds of the United States which had been appropriated by Congress and authorized to be expended by the President through the agency determined by him. Through the authority delegated by him to the United States Shipping Board Emergency Fleet Corporation, under which it employed the American International Corporation as its agent, and under which the latter corporation employed the American International Shipbuilding Corporation as its agent, so much of the funds deposited as were used for payment of wages of workmen employed under the construction contract were a part of the funds of the United States and were expended by the corporation carrying out the contract only as agent for the United States.

Under the circumstances, a fraud, the effect of which was to fictitiously increase the total amount of the pay roll and therefore the contract actual cost of the shipyard at Hog Island or the vessels being constructed there, would by so much diminish the funds of the United States. The offense was therefore within the jurisdiction of this Court under the provisions of section 37 of the Criminal Code of March 4, 1909, c. 321, 35 Stat. 1096 (Comp. St. § 10201). I see no error in the admission of the documentary evidence.

The motion for a new trial is overruled.