COMMONWEALTH FINANCE CORPORATION v. LANDIS (EMERGENCY FLEET CORPORATION, Garnishee),
and three other cases.

(District Court, E. D. Pennsylvania. November 7, 1919.)

Nos. 5328, 6286, 6326, 6404.

1. UNITED STATES ⊚⇒125—MOTION TO DISMISS GARNISHMENT AGAINST SHIPPING BOARD.

Motions to dismiss actions in which the United States Shipping Board Emergency Fleet Corporation was summoned as a garnishee, and to dismiss and quash actions of assumpsit against such corporation, on the ground that the corporation was not subject to process, are unknown to the law.

2. UNITED STATES ⊚⇒125—LIABILITY TO BE SUED.

Suit cannot be maintained against the United States; it being a sovereign.

3. GARNISHMENT ⊚⇒18—EMERGENCY FLEET CORPORATION EXEMPT AS GARNISHEE.

The United States Shipping Board Emergency Fleet Corporation, in so far as it partakes of the character of a sovereign, is exempt from garnishment under the principle that a municipality cannot be subjected to liability growing out of any relation of stakeholder between private litigants.

4. UNITED STATES ⊚⇒125—IMMUNITY OF SHIPPING BOARD EMERGENCY FLEET CORPORATION FROM SUIT.

The United States Shipping Board Emergency Fleet Corporation is not subject to suit with respect to those matters of a military nature where it is acting for the welfare and protection of the whole people.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5.** UNITED STATES ⟨⟩125—IMMUNITY OF SHIPPING BOARD EMERGENCY FLEET
CORPORATION FROM SUIT.

In view of the legislation creating the United States Shipping Board
Emergency Fleet Corporation, and of the fact that Congress saw fit to
act through a private corporation, *held* that, although the United States
owns the stock of the corporation, it is not exempt from service of pro-
cess, and may be garnished and sued, even though it may appear at trial
that the matter is one relating to which the corporation is clothed with
the attributes of sovereignty, and not subject to suit.

**6.** REMOVAL OF CAUSES ⟨⟩107(4)—MATTERS WHICH CAN BE RAISED ON MOTION
TO REMAND.

Where actions to which the United States Shipping Board Emergency
Fleet Corporation was a party were removed from the state to the fed-
eral court on the ground that a law of the United States was involved, it
being the contention that the corporation was not subject to suit, but was
clothed with the attributes of sovereignty, it may be questioned on motion
to remand whether a law of the United States was involved in the first
instance, or became involved in presentation of the defense.

At Law. Action by the Commonwealth Finance Corporation, as-
signee, against Philip Landis (No. 6326), in which the Emergency
Fleet Corporation was summoned as garnishee; action by Joseph H.
Kinney against the Fairbanks Steam Shovel Company (No. 5328), in
which the United States Shipping Board Emergency Fleet Corpora-
tion was summoned as garnishee; and actions by James P. Judge (No.
6404) and the N. W. Lawton Lumber Company, a corporation (No.
6286), against the United States Shipping Board Emergency Fleet
Corporation. On motions to dismiss the actions. Motions denied.

Louis J. Palmer, Harry M. McCaughey, John J. McDevitt, Jr.,
Brown & Lloyd, of Philadelphia, Pa., and McCready Sykes, of New
York City, for plaintiffs.

Wm. Y. C. Anderson and Francis Fisher Kane, U. S. Atty., both of
Philadelphia, Pa., for garnishee defendant Emergency Fleet Corpora-
tion.

DICKINSON, District Judge. [1] The first question which sug-
gests itself in these cases is the question of procedure. The motion,
in some of the cases, is to dismiss the actions, and in others to quash
and dismiss. No such motions are known to the practice in cases of
these kinds, and they might be disposed of by simply denying them on
this ground. The question sought to be raised, however, is a substan-
tial one, and, if raised in a form known to procedure practice, must be
met and answered, and for this reason we have been asked to an-
swer it, without regard to the form in which it is raised. One of the
actions is in foreign attachment; one is an attachment in execution;
one an action in assumpsit; and one in trespass. The purpose is the
same in the two attachment cases. The plaintiff, having secured a judg-
ment against the defendant, is seeking to have that judgment satis-
fied in whole or in part by having applied to its payment moneys aver-
red to be in the hands of the Emergency Fleet Corporation belonging
to the defendant. Whether there are any such moneys is sought to be
determined in the method provided by law in the respective forms of

action brought. In these forms of procedure the Emergency Fleet Corporation has been made the garnishee.

[2, 3] The defense now interposed is not that there are no moneys in the hands of the garnishee belonging to the respective defendants, but is that the garnishee is immune from service and is not obliged to respond in proceedings of these kinds. The other cases are straight actions against the Fleet Corporation. This immunity is put upon the dual or alternative ground that the corporation is the United States of America, clothed in the royal purple of sovereignty, and because of this cannot be subjected to any process, or at least that the garnishee in the attachment cases so far partakes of a public character that it is within the rule which exempts municipalities from being subjected to liability growing out of any relation of stakeholder between private litigants. Each and both these principles or doctrines of the law must be accepted. The sole question is: Is the Fleet Corporation within the application of either principle?

[4, 5] We have had neither time nor opportunity to investigate the organization of this corporation, for the purpose of getting first-hand information of what it is. We have not taken the time to make this investigation, because counsel agree upon what are the essentials of this organization. These are that the Fleet Corporation is a private corporation, in the organization of which it is provided that the United States shall own more than 50 per cent. of its stock, and may own, and the fact is that at present it does own, all of the capital stock, except a few shares, which, for organization purposes, are required to be owned by those who have certain official relations with the company. It is further organized for the purpose of acting as an agent of the United States, and doing what the United States might do direct. These things, which are expected to be thus done by the corporation, are essentially of a military character, and primarily for the welfare and protection of the people.

We have, in consequence, room for the following distinctions and the following at least possible differences: One of the distinctions is that the Fleet Corporation is, as before stated, a private corporation, and, in this sense, a private individual or a person authorized to perform a public service as an agent of the United States. One of these possible differences is that private persons or individuals may be among the ultimate owners of the assets of the corporation, and the United States is required to be also among these ultimate owners, and the property and assets of the corporation may be actually and wholly in use for public purposes, or may at least possibly not be in such actual use, or all such property and assets may not be in such actual use.

There is another respect in which a distinction, which is also a difference, may exist. The Fleet Corporation may be acting as such agent of the United States, or may not be so acting, or it may so act in some of its activities, and not in others. It follows from this that when it is acting as the United States, and such of its property and assets as are in the actual use of the United States, neither it as such agent nor such property can be drawn into or jeopardized by disputes

between private parties. It would also follow, however, that in so far as it is acting as a private corporation, and in so far as its property and assets are and are used as its private property, it is not immune from the liabilities and responsibilities which are imposed by law upon litigants.

The foregoing observations indicate the line to be drawn. It is easy to draw the line, but not so easy to determine when and where it shall be drawn. It has been determined for us that when the corporation, through one of its activities, was fabricating ships for the United States that the property which otherwise would be the private property of the corporation was being devoted to and used in this public purpose, it might be found to be the property of the United States, and that any one who was guilty of selling any part of it was subject to indictment for stealing the property of the United States. United States v. Carlin (D. C.) 259 Fed. 904.

It has also been determined for us that, when the United States had bought and become the owner of all the property, assets, and franchises of a railroad, and there was nothing which by any possibility could be seized under an execution issued upon a judgment, and nothing upon which any part of that judgment could be a lien other than property of the United States, a proceeding having for its sole purpose and objective such a method of enforcing the payment of a claim, being thus prosecuted, could not be sustained. Ballaine v. Alaska, 259 Fed. 183, —— C. C. A. ——. There is authority, however, for the proposition that under some circumstances a proceeding against a corporation having these general relations with the United States can be upheld. Salas v. United States, 234 Fed. 842, 148 C. C. A. 440.

There is thus presented this broad distinction, and this general proposition, that sometimes a proceeding set in motion to have determined the obligation of a corporation of this general kind is permitted to become effective and sometimes it is not. This proposition necessarily involves the thought that there is a question to be determined, and this again necessarily carries the further thought that the corporation is not immune from process, because otherwise nothing other than such immunity could be determined. It may be that if any one of these plaintiffs secures a final judgment against this corporation, he will be unable to enforce payment of the judgment because of the fact that there is no property out of the sale of which the judgment can be paid, other than either property of the United States or property which is in use by the United States for military purposes. The futility or hopelessness of execution process does not, however, deprive a litigant of judgment process.

There is this very practical and common-sense view of the broad question here involved and of the general situation presented. Private persons and individuals must deal with this corporation as contractors or otherwise in the accomplishment of the work with which the corporation has to do. Supplies of materials must be furnished to the corporation and to those who have contracted with it. Obligations of some kind to make payment must be incurred. Congress has found it to be best to so provide that the United States shall not directly incur

these obligations. If the obligations incurred were the obligations of the United States, it has so far laid aside the robes of sovereignty as to permit the question of the existence of such obligation to be determined by the Court of Claims and within limits by the District Courts. If this remedy was pursued by any one having a claim, no matter how just that claim might be, the United States might very well interpose the defense that it had not incurred any obligation, and the foregoing remedy would be denied the claimant. If the corporation was not amenable to process, then the intolerable situation would be presented that the corporation was free to admit or repudiate its obligations at its free will and pleasure. The sovereign, it must be conceded, cannot be sued without its consent; but the doctrine must also be accepted that he may consent.

We are certainly justified in assuming that Congress, by its legislation on the subject, intended that the obligations which necessarily must be incurred will be met either by the United States or this corporation, and that it was further intended that the existence and extent of such obligations should be determined either as against the United States or as against the corporation, and as Congress has not seen fit to have the United States directly assume the obligation, and has not provided any way in which any questions which may arise may be determined in favor or against the United States, the further inference is justified that Congress intended that whatever obligations were incurred were incurred by this corporation, and has further intended that such questions as arise may be determined in favor of or against the corporation. If the above inferences are justified, then one of two things follows: Either that the corporation is not immune from the service of process by virtue of its public character, or if it is the United States, in doing whatever it does, then the United States has consented to the bringing of appropriate actions against it.

[6] Each of these cases originated in a state court. There was a petition for a removal, not upon the express ground that the United States was a party, but upon the ground that a law of the United States was involved. Whether such law was involved in the first instance, or became involved in the presentation of the defense, might have been questioned by a motion to remand. No such motion was made, and no such question raised. This is doubtless due to the recognition by the plaintiffs of the fact that the question before us would inevitably come into the courts of the United States, and hence a motion to remand would be of no practical value.

The motions in each case are denied.