GOULD COUPLER CO. v. U. S. SHIPPING BOARD EMERGENCY FLEET CORPORATION.

EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, v. U. S. SHIPPING BOARD EMERGENCY FLEET CORPORATION et al.

(District Court, S. D. New York. December 9, 1919.)

SHIPPING ☞3½, New, vol. 8A Key-No. Series—EMERGENCY FLEET CORPORATION SUBJECT TO SUIT.

The United States Shipping Board Emergency Fleet Corporation, incorporated under the laws of the District of Columbia, *held* subject to suit in general like other corporations created under such laws.

At law. Suits by the Gould Coupler Company against the United States Shipping Board Emergency Fleet Corporation and by the Employers' Liability Assurance Corporation, Limited, of London, against the United States Shipping Board Emergency Fleet Corporation and another. On motion to set aside process. Denied.

Greene & Hurd, of New York City, for Gould Coupler Co.

Koehler & Weymann, of New York City, for Employers' Liability Assur. Corporation, Limited, of London.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Francis G. Caffey and John E. Walker, both of New York City, for the United States.

Wm. Y. C. Anderson, of Philadelphia, Pa., for Emergency Fleet Corporation.

LEARNED HAND, District Judge. The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962, seems to me finally to control both cases. In that case the vessel had been requisitioned and completed by the Fleet Corporation and chartered by the Shipping Board, under the "emergency shipping fund" provision of the Urgent Deficiencies Act. That provision (40 Stat. 182 [Comp. St. 1918, § 3115$^1$/$_{16}$d]) empowered the President to requisition any ship then being constructed and to exercise his powers through any designated agencies. The question was whether such a ship was within the liability to arrest of section 9 of the Shipping Act (Comp. St. § 8146e), or whether that act applied only to ships which had been built, chartered, or purchased by the Shipping Board under section 5 of the Shipping Act (section 8146c). It was held that, though the President was free to select other agencies, Congress showed that it contemplated the probability that he would in fact choose the Shipping Board and the Fleet Corporation, and that if he did choose them the general administrative provisions of the Shipping Act should apply, among them the liability of all vessels to be arrested on civil process. Therefore the court thought it an irrelevant consideration whether the Shipping Board had chartered the Lake Monroe under its powers derived from the Shipping Act or as a delegate of the President. In either case section 9 applies to such vessels.

Now, in these cases it appears to me too clear for dispute that the Fleet Corporation is in general capable of being sued. Section 11 of the Shipping Act (Comp. St. § 8146f) provides that the corporation shall be chartered under the laws of the District of Columbia, and no one disputes that this means under its general corporations laws. The corporation was so formed under Code of Law D. C. c. 18, subchapter 4, which authorized actions by and against any corporation so organized. The Fleet Corporation was therefore meant to be a legal person without immunity quite as much as any other corporation. In view of these provisions it is unnecessary to consider any of the cases touching the general liability to process of corporations in which the United States may be a stockholder or which it may organize for governmental purposes.

If so, then this process would have been legal if these actions had concerned any activities authorized by the Shipping Act. But the objection raised is to process in suits which arose out of the execution of duties imposed upon the Fleet Corporation by the President under the Emergency Shipping Fund provision of the Urgent Deficiencies Act. That provision (a) authorized the President to place any order for ships or materials as he might think necessary, and it is to be assumed apparently on this motion that it was such an order that is the subject of the larger of the claims at bar. The other claim arises as a necessary incident to the construction of ships, and may properly be

thought to fall within the same power. When the President chose the Fleet Corporation as his agent to discharge the duties so imposed upon him, it may of course be argued, as the defendant does, that the agent retained the same immunity as the President would have had, had he deputed it to an individual immediately under his control. Nevertheless, by a precise parity of the reasoning which the Supreme Court adopted in The Lake Monroe, supra, it must follow that in choosing the Fleet Corporation he chose it with all its limitations upon its head. In other words, Congress contemplated that possibility, and expected that in so delegating his powers he must subject their exercise to the scrutiny and determination of the customary tribunals, precisely as the Fleet Corporation's other activities were subject.

To draw a distinction between ships and the contracts under which they were made would be a capricious rule. If all ships operated by the Board are subject to arrest, whether or not they are operated under the President's powers, it is hard to see why disputes should be justiciable arising under contracts made to build one class of ships and not under those made to build the other. No possible ground appears to me for distinguishing between the agents selected by the President when discharging one of his duties and when discharging any other.

Moreover, it is in general highly desirable that, in entering upon industrial and commercial ventures, the governmental agencies used should, whenever it can fairly be drawn from the statutes, be subject to the same liabilities and to the same tribunals as other persons or corporations similarly employed. The immunity of the sovereign may well become a serious injustice to the citizen, if it can be claimed in the multitude of cases arising from governmental activities which are increasing so fast. At least I have no disposition to strain the point in their favor, where they fall clearly within the principle of authoritative decisions.

I see nothing in U. S. v. Carlin (D. C.) 259 Fed. 904, and U. S. v. Union Timber Products Co. (D. C.) 259 Fed. 907, which in the least contradicts this conclusion. I have no doubt that the Fleet Corporation, certainly when acting as the President's delegate, is a governmental agency, and that a fraud upon it is a fraud upon the United States. That is nothing to the point, which is whether Congress has indicated that in this as in its other activities its disputes with citizens shall be justiciable in the courts, no doubt only United States courts.

The motions are denied.