## SOUTHERN BRIDGE CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, S. D. Alabama. July 3, 1920.)

1. **Pleading ☞106 (1)—Plea in abatement merely to give better writ to plaintiff.**
   Plea in abatement is merely to put the instant suit out of court, and to give a better writ to plaintiff for another suit.

2. **Removal of causes ☞112—From state to federal court does not recreate suit.**
   Removal of suit from a state court to the federal District Court does not recreate it, and if the state court had no jurisdiction, it is the duty of the District Court so to declare; the question being properly raised by plea in abatement, though such suit might have been brought in the District Court.

3. **Evidence ☞23 (1)—Interest of government in building ships to meet submarine menace commonly known.**
   It is matter of common knowledge that at the time of creation of the Emergency Fleet Corporation the government was greatly interested in the building of ships to overcome the German submarine menace.

4. **Courts ☞489 (10)—Emergency Fleet Corporation a governmental agency, not to be sued in state court.**
   In view of the Shipping Act (Comp. St. §§ 8146a–8146r), and Act Cong. March 9, 1920, Emergency Fleet Corporation of United States Shipping Board *held* an instrumentality of the federal government, not to be sued in a state court, but in a federal District Court, under Judicial Code, § 24, subd. 20 (Comp. St. § 991[20]).

At Law. Suit by the Southern Bridge Company, a corporation, against the United States Shipping Board Emergency Fleet Corporation. On hearing of demurrer to plea in abatement. Demurrer overruled.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Smiths, Young & Leigh, of Mobile, Ala., for plaintiff.
A. D. Pitts, of Selma, Ala., and Harry T. Pegues, of Mobile, Ala., for defendant.

ERVIN, District Judge. This was a suit brought by the plaintiff in the state circuit court of Mobile county, and claimed in three counts certain sums of money as due by the defendant to plaintiff. The suit was removed from the state to the federal court under a petition, in which it was set up that the suit is of a civil nature at common law, and arises under the laws of the United States, and does not sound in tort, and further sets up that this suit is a suit against the United States.

Upon the filing of the papers in the federal court, a plea in abatement was filed by the defendant, in which it was set up that the defendant corporation was organized under a law of Congress, for the District of Columbia, by Act March 3, 1901, c. 854, 31 Stat. 1284, in pursuance of the authority of the Shipping Act of September 7, 1916 (Comp. St. §§ 8146a–8146r), and that the said corporation was an appointee of the President of the United States and representative of the United States, and that this is a suit against the United States, wherefore the circuit court of the state of Alabama, had no jurisdiction of the suit against the defendant.

There was a second plea, setting up merely that the United States Shipping Board Emergency Fleet Corporation is the agent or representative of the United States, and that the said circuit court of Mobile county had no jurisdiction of a suit against it. There were demurrers filed to these pleas to test their sufficiency, so that the question for determination is whether the defendant, the United States Shipping Board Emergency Fleet Corporation is such an agent or representative of the United States government as that a suit against it is in fact and in effect a suit against the government.

At the outset, it is urged that, whether the state court had jurisdiction or not, this court unquestionably has, and hence, as the case has been removed here to a court having jurisdiction, that it should now proceed, regardless of whether the state court had jurisdiction or not. I can see no difference between the raising of the question here after its removal to this court and the question being raised in the Supreme Court of the United States, by way of appeal, if it should be decided adversely to this contention in the state courts, because in either event it would be finally determined in the federal court.

[1] The purpose of a plea in abatement is merely to put out of court the instant suit, and give a better writ to the plaintiff in another suit which may be begun. There is no difference between this plea and any other plea in abatement, if the facts set up show that there was no jurisdiction in the state court.

[2] Bringing the case here from the state court does not recreate it, or give any more life to the original complaint which was filed in the circuit court, than it then had. It merely removes what, if any, suit was pending in the state circuit court, and, if that court had no jurisdiction of the suit which was removed here, then it would be my

duty to so declare on the question being properly raised, even though such a suit might have been brought in this court in the first instance.

The question for determination really is whether the state courts have any jurisdiction of a suit against the United States Shipping Board Emergency Fleet Corporation. I have been unable to find any case in which this question has been determined, nor has any such case been cited to me in argument.

It is true that in at least two cases, recently decided, it has been held that the defendant is subject to suit. Gould Coupler Co. v. Emergency Fleet Corporation (D. C.) 261 Fed. 716; Commonwealth Finance Corporation v. Landis, Emergency Fleet Corp. (D. C.) 261 Fed. 440. In neither of these cases was the question considered as to the right to sue the company in a state court, though in the Landis Case, as here, the suits were originally brought in the state court and removed to the federal court.

I agree both with Judge Dickinson in the Landis Case and with Judge Hand in the Gould Case in holding that the defendant is liable to suit in the federal courts. Judge Dickinson, on page 444, of 261 Fed., says:

"If the obligations incurred were the obligations of the United States, it has so far laid aside the robes of sovereignty as to permit the question of the existence of such obligation to be determined by the Court of Claims and within limits by the District Courts."

Judge Learned Hand, in the Gould Case, on page 718 of the same volume, says:

"I have no doubt that the Fleet Corporation, certainly when acting as the President's delegate, is a governmental agency, and that a fraud upon it is a fraud upon the United States. That is nothing to the point, which is whether Congress has indicated that in this, as in its other activities, its disputes with citizens shall be justiciable in the courts, no doubt only United States courts."

Tracing the history of the Emergency Fleet Corporation, we find first passed by Congress what is denominated the Shipping Act. 39 Statutes at Large, 728. Any one examining this act, even in a cursory manner, will be struck by the fact that its purposes and the broad powers given as to taking over and managing the ships and shipping, and the powers to inquire into all shipping contracts, and to regulate and control them, and finally to inquire into alleged breaches of the terms of the act, must conclude that the functions of the board thereby provided for were governmental, and not those of a private business concern. Section 11 of this act (section 8146f) says in part:

"That the board, if in its judgment, such action is necessary to carry out the purposes of this act, may form under the laws of the District of Columbia one or more corporations for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States."

[3, 4] It is common knowledge that the government was at that time greatly interested in the building of ships to be used by it for the transportation of men, munitions, and supplies, because of the great destruction of shipping by the German submarines. The Emergency Fleet Corporation was chartered pursuant to this power, and Con-

gress has there declared that this corporation was created and was necessary to carry out the purposes of the Shipping Act, which certainly were governmental. I do not doubt that in the management of the Fleet Corporation much of its business is of the same character as that of private business corporations, but the moving cause of its creation was to aid the government in the purposes which the Congress considered to be of public need. The fact of its organization as a private corporation, however, would not prevent this corporation acting as the agent or representative of the federal government in its general and ordinary procedure.

"Where an officer or an agency of a state purchases goods for a state, suit against such officer or agency, is a suit against the state." Murray v. Wilson, 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742; Cunningham v. M. & B. R. R., 109 U. S. 447, 3 Sup. Ct. 292, 609, 27 L. Ed. 992.

The question for determination really is whether this corporation is doing private business or a public one, intended to serve the uses of the federal government. I have called attention to the language in the Shipping Act which provided for its creation, to show that the Congress intended this corporation as a governmental agency.

If this was a mere private business corporation, the fact that the United States was a stockholder would not prevent its being sued as any other corporation, for, as said by Chief Justice Marshall, in speaking for the court in Bank of U. S. v. Planters' Bank of Georgia, 9 Wheat. 907, 6 L. Ed. 244:

"It is, we think, a sound principle that, when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus, many states of this Union, who have an interest in banks, are not suable even in their own courts; yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation than are expressly given by the incorporating act."

Since the decision in this case, however, there are a number of decisions by the Supreme Court, where a state has undertaken to act through some agency, corporation, or medium in the performance of their public functions, and, whenever this has been undertaken, the courts have uniformly held that such agency, corporation, or medium cannot be sued except in such manner and in such courts as the states have agreed to permit suits to be brought. So that the question revolves itself into whether the state has invested in the stock of a corporation doing a private business, or whether the state has had organized a corporation nominally a private one, but designed to perform the functions of the state, or to act as its agent or creature. When the business undertaken by the corporation is that of the state, and not a mere private business, the fact that the government uses

the medium of a private corporation in conducting this business, instead of conducting it in its own name, should make no difference, and the government cannot be then sued by suing the corporation, any more than the government could be sued directly.

In Cunningham v. M. & B. R. R., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992, where it was sought to have a receiver appointed for a railroad company, and to foreclose a mortgage and apply the proceeds to the payment of certain bonds, it appeared on the face of the bill that the state had indorsed bonds of the company under the provisions of a statute passed by it, which bonds were to operate as a prior mortgage upon all the property of the company, which could be enforced by a sale by the Governor upon default in payment of the bonds so indorsed, or interest on them as it fell due; that there was default in the payment of these bonds, and the state had taken up the bonds and had given her own bonds in place of these she had taken up; and that there had been an advertisement by the Governor of the state and a sale made by him under the power in the mortgage, and this sale was attacked by the bill as voidable, because, as contended under the statutory and executed mortgages, the state was trustee of the property mortgaged for the benefit of the bondholders, and her purchase could be set aside by the beneficiaries under the trust, when they elected to do so. The Governor and certain other state officials, who had been made parties, demurred to the bill, because it was an attempt to make the state of Georgia a party. The court, in concluding its opinion, says:

"As was said in Barney v. Baltimore, 6 Wall. 280, there are persons who are merely formal parties without real interest, and there are those who have an interest in the suit, but which will not be injured by the relief sought, and there are those whose interest in the subject-matter of the suit renders them indispensable as parties to it. Of this latter class the court said, in Shields v. Barrow, 17 Howard, 130: 'They are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest or leaving the controversy in such a condition that its final disposition may be wholly inconsistent with equity and good conscience.' 'In such cases,' says the court in Barney v. Baltimore, 6 Wall, 280, 'the court refuses to entertain the suit when these parties cannot be subjected to its jurisdiction.' In the case now under consideration, the state of Georgia is an indispensable party. It is in fact the only proper defendant in the case. No one sued has a personal interest in the matter or any official authority to grant the relief asked."

Among other cases where the state was acting through certain private agencies, and it was held that they were not liable to suit, was Shields et al. v. Barrow, 17 How. 130, 15 L. Ed. 158, and Ballaine v. Alaska Northern Railway, 259 Fed. 184, 170 C. C. A. 252.

"Where a state has given its consent to be sued in certain courts or under certain conditions, suit can be maintained only in the court and under the conditions as named; and where consent has been given by a state to be sued in its own courts, suit cannot then be maintained against it in the federal courts." Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140; Chandler v. Dix, 194 U. S. 590, 24 Sup. Ct. 766, 48 L. Ed. 1129; Murray v. Wilson Distilling Co., 213 U. S. 172, 29 Sup. Ct. 458, 53 L. Ed. 742.

Referring again to the source from which this corporation sprung, and the language of this source, as found in the Shipping Act, we see

that the government considered this corporation as necessary to carry out the purposes of the Shipping Act, which were governmental. We find, by the act approved March 9, 1920, that section 9 of the Shipping Act (section 8146e), which was relied on by the Supreme Court in the case of the Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 62, as authorizing the seizure of vessels belonging to the Shipping Board, has been changed so that such seizure shall no longer he had, but that a libel should be instituted in personam against the *United States* or against *such corporation.* (Italics mine.) This statute again shows a recognition by Congress and a declaration by it that this corporation was an agency of the government, for it permits a suit directly against the government on an obligation incurred by the corporation. The statute provides:

"Such suits shall be brought in the District Court of the United States, for the District." etc.

—and regulates the service of process, etc.

The decision of the Supreme Court in The Lake Monroe Case states that the total stock of $50,000,000 was owned by the United States. It is therefore manifest that, as the United States owned all the stock, all of the properties in the name of the corporation belonged to the United States, and none of it could be levied on and sold, except to the detriment of the government. While it is true the United States is not a nominal party on this record, yet, as was said in Hagood v. Suthern, 117 U. S. 67, 6 Sup. Ct. 615, 29 L. Ed. 805:

"Though not nominally a party, * * * it [the state] is the real and only party in interest; the nominal defendants being the officers and agents of the state, having no personal interest in the subject-matter of the suit, and defending only as representing the state. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the state. The state is not only the real party to the controversy, but the real party against which relief is sought by the suit, and the suit is therefore substantially within the prohibition of the Eleventh Amendment to the Constitution of the United States, which declares that 'the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.' "

Applying these words to the present suit, there can be no question that the suit is to compel the payment by the United States out of its property for a contract which it made in the name of the Emergency Fleet Corporation with the plaintiffs.

Taking the provisions of the Judicial Code, subdivision 20 of section 24 (Comp. St. § 991 [20]), which gives jurisdiction to the District Courts, concurrent with the Court of Claims, of certain suits against the United States, I conclude, as did Judges Dickinson and Hand, that the United States have provided that this defendant could be sued in the United States District Court; but there is nowhere that I can find any authority for suing such corporation in a state court, and, as I further conclude that this corporation is a governmental agency of the United States, I find that the state court had no jurisdiction to entertain a suit against it.

The demurrers to the plea in abatement will therefore be overruled.