**WORKS & RHEA v. SHAW (MIMS, Garnishee).**

No. 4882.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1934.

Drew & Richardson, of Minden, for appellant.

Coleman Lindsey and Clifford E. Hays, both of Minden, and Jerome N. Frank, Victor E. Anderson, and Harold M. Stephens, all of Washington, D. C., for appellees.

MILLS, Judge.

Plaintiff, holder of a judgment against defendant, under fi. fa. had garnishment issue to Henry Mims, individually, as parish demonstration agent for the state of Louisiana and as agent of the Secretary of Agriculture of the United States.

Mims answered that the United States Department of Agriculture is indebted unto defendant Shaw in the sum of $277, which is represented by a check now in his hands; that the amount is due Shaw by virtue of a "plow-up" cotton contract entered into under the provisions of the Federal Agricultural Adjustment Administration Act; that he has been advised by the administrator of said act; that the proceeds covered by the check are not subject to garnishment; and that accordingly he will hold the check subject to the ruling of the courts.

Defendant Shaw, in answer to the petition for garnishment, takes the position that the check represents a trust fund, and that it is exempt from seizure under the laws of Louisiana and the United States and the rules and regulations of the United States Department of Agriculture. Both garnishee and defendant pray that the proceedings be dismissed at plaintiff's cost.

The matter went to trial on an admission of the truth of the answer of the garnishee. The lower court rendered judgment in favor of defendant and garnishee, and dismissed the proceedings at plaintiff's cost, from which judgment plaintiff has appealed.

Counsel for plaintiff readily concede that, as a general rule, neither the United States government nor its agents or disbursing officers paying out strictly governmental funds are subject to garnishment, but contend that under the provisions of the Agricultural Adjustment Act the Department of Agriculture has gone into a strictly private business in the commercial field. They show that merchants who supply the farmer on the faith of the crop "must sit by and see that crop plowed up which, had it matured, would have been subject to seizure without having the same right to seize the funds to be paid the farmer as a consideration for the destruction of the crop." Counsel cite no authority in support of their position, and concede that there is no provision in the act making funds payable under it subject to execution. The case must then be decided upon the general rule. That rule is stated in 28 Corpus Juris, to be: "But, according to the weight of authority, general provisions authorizing garnishment do not, in the absence of a clearly expressed legislative intention to such effect, apply to the federal and state governments, or their officers or agencies."

On page 57 of the same volume and work we find: "The ground usually assigned is that public policy demands that the prosecution of public business should not thus be interrupted or inconvenienced."

On page 58 we find: "Nor is the exemption on the ground of public policy affected by the fact that the fund sought to be reached has been segregated from the general public funds for the purpose of paying the specific debt sued on."

In the case of Buchanan v. Alexander, 4 How. 20, 11 L. Ed. 857, the United States Supreme Court holds:

"The important question is, whether the money in the hands of the purser, though due to the seamen for wages, was attachable. A purser, it would seem, cannot, in this respect, be distinguished from any other disbursing agent of the government. If the creditors of these seamen may, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army and of the navy; and also in every other case where the public funds may be placed in the hands of an agent for disbursement. To state such a principle is to refute it. No government can sanction it. At all times it would be found embarrassing, and under some circumstances it might be fatal to the public service.

"The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended.

"So long as money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen."

The Agricultural Adjustment Act is not a

private act, but is one of national scope and purpose, which purpose would be utterly defeated if the funds offered in consideration of the plowing up of the crop are subject to garnishment in the hands of the government, for the debts of the farmer. There can be no question that in the present case the possession of its agent is the possession of the government.

In Commonwealth Finance Corporation v. Landis (D. C.) 261 F. 440, it is held that, where the government sees fit to act through a private corporation such as the United States Shipping Board Emergency Fleet Corporation, the instrumentality is subject to garnishment. We do not think that under the Agricultural Adjustment Act the government is engaged in a private enterprise or is acting through a private instrumentality. While the general rule may work a hardship in some cases, it is dictated by public necessity. . It has been recognized in this state in the following cases: Mechanics' & Traders' Bank v. Hodge, 3 Rob. 373; Pitard v. Carey, 1 McGloin, 289; Wild v. Ferguson, 23 La. Ann. 752.

We think the judgment of the lower court is correct, and it is affirmed.

DREW, J., recused.